UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Critical Care Services, Inc. d/b/a Life Link III, <br><br> Plaintiff, <br><br> v. <br><br> Blue Cross Blue Shield of Wisconsin, <br><br> Defendant. | **COMPLAINT** <br><br> **JURY TRIAL DEMAND** <br><br> Case No. _____ |

1. Plaintiff Critical Care Services, Inc. d/b/a Life Link III ("Life Link III") brings this action against Defendant Blue Cross Blue Shield of Wisconsin ("Blue Cross") for breach of contract, promissory estoppel, and unjust enrichment for its failure to pay for emergency medical services Life Link III provided to Blue Cross's insureds.

2. Life Link III provided emergency air ambulance services to Blue Cross's insureds but does not have an in-network contract with Blue Cross.

3. Life Link III and Blue Cross agreed to three Single-Case Agreements ("SCAs"), which are contracts for out-of-network providers that establish payment amounts for services provided to individual patients.

4. Despite agreeing to SCAs for these three patients, Blue Cross has failed to pay, in full, for the air ambulance services Life Link III provided. Defendants have therefore breached the SCAs.

5. In addition, Defendants have failed to properly process claims for two other Blue Cross insureds who received emergency air ambulance services from Life Link III.

As a result, Defendant has been unjustly enriched and received a substantial benefit for the services Life Link III provided to Defendant's insureds.

## PARTIES

6. Critical Care Services, Inc. is a Minnesota nonprofit corporation and provider of air ambulance services that operates as Life Link III. Life Link III's corporate headquarters and principal place of business are located at 3673 Lexington Ave N., Arden Hills, Minnesota.

7. Defendant Blue Cross Blue Shield of Wisconsin is an insurance company domiciled in Wisconsin and registered with the Wisconsin Commissioner of Insurance. Defendant's statutory home office address as recorded with the Wisconsin Commissioner of Insurance is N17 W24222 Riverwood Drive, Suite 300, Waukesha, Wisconsin. Blue Cross Blue Shield of Wisconsin does business and sells insurance in Wisconsin as Anthem Blue Cross Blue Shield of Wisconsin.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332 because the amount in controversy is $168,954.90, which is more than $75,000, and Plaintiff and Defendant are citizens of different states.

9. This Court has personal jurisdiction over this action because the events giving rise to the claims took place in Wisconsin and Defendant is a Wisconsin resident.

10. This Court is a proper venue for this petition under 28 U.S.C. § 1391(a)(1) because Defendant's headquarters are located in this District.

## FACTUAL ALLEGATIONS

11. Life Link III provides emergency air ambulance services throughout Minnesota and Western Wisconsin, including to patients insured by Defendant.

12. Life Link III has provided emergency air ambulance services to many of Defendant's insureds, but Defendant has failed to pay for those services.

13. Life Link III does not have a network agreement with Defendant and is considered an "out-of-network" provider.

14. Out-of-network claims for emergency air ambulance services may be subject to the No Surprises Act ("NSA"), which establishes procedures for providers and insurers to resolve payment disputes.

15. Under NSA procedures, the parties are required to engage in negotiations to resolve the payment disputes. If negotiations are unsuccessful, a party may submit the dispute to a binding Independent Dispute Resolution ("IDR") process.

### A. Life Link III Accepts Blue Cross's Single-Case Agreements, but Blue Cross Fails to Pay, Breaching the Contracts.

16. As described below, Life Link III provided emergency air ambulance services to Blue Cross's insureds on November 12, 2023, December 30, 2023, and October 5, 2024.

17. For each claim discussed below, Blue Cross offered a SCA with a payment amount for the claim at issue and Life Link III accepted each offer.

18. Blue Cross has failed to pay the agreed-upon amounts and breached its obligations under each SCA and owes Life Link III $68,092.87 pursuant to these contracts.

19. For each claim discussed in this section below, the claims were not subject to the NSA IDR process because the parties reached a binding agreement resolving the dispute prior to any IDR proceedings.

### i. Claim for Services Provided on November 12, 2023

20. On November 12, 2023, Life Link III provided emergency air ambulance services to a patient insured by Defendant.

21. Life Link III billed a total of $43,414.00 for these services and submitted a claim to Defendant.

22. Defendant offered a payment of $30,389.80 as full compensation for the claim through a SCA.

23. On January 31, 2024, Life Link III accepted the negotiated payment amount of $30,389.80.

24. The agreement states that the claim would be paid within 15 business days of the date the provider signed the agreement.

25. Defendant did not deny the claim, find it to be non-covered under the patient's plan, or reject the terms of the agreement.

26. On February 21, 2024, Defendant made two payments totaling $17,119.60 on the claim, but did not pay the full amount of the negotiated payment accepted by Life Link III.

27. Defendant owes Life Link III $13,270.20 pursuant to the negotiated agreement.

### ii. Claim for Services Provided on December 30, 2023

28. On December 30, 2023, Life Link III provided emergency air ambulance services to a patient insured by Defendant.

29. Life Link III billed a total of $44,238.00 for these services and submitted a claim to Defendant.

30. Defendant offered a payment of $31,029.60 as full compensation for the claim through a SCA.

31. On January 9, 2024, Life Link III accepted the negotiated payment amount of $31,029.60.

32. The agreement states that the claim would be paid within 15 business days of the date the provider signed the agreement.

33. Defendant did not deny the claim, find it to be non-covered under the patient's plan, or reject the terms of the agreement.

34. Defendant owes Life Link III $31,029.60 pursuant to the negotiated agreement.

35. On November 3, 2025, Defendant notified Life Link III through counsel that it had unilaterally determined that the claim was not payable and therefore refused to make any payment under the SCA.

36. Except through this assertion that the claim is not payable, Defendant had not, and still has not, notified Life Link III that the claim was denied nor has it provided any reasons why the claim would not be payable.

### iii. Claim for Services Provided on October 5, 2024

37. On October 5, 2024, Life Link III provided emergency air ambulance services to a patient insured by Defendant.

38. Life Link III billed a total of $56,987.00 for these services and submitted a claim to Defendant, consistent with Defendant's policies.

39. Defendant is an independent licensee of the Blue Cross and Blue Shield Association.

40. Under Defendant's policies, when a patient is a member of a different Blue Cross and Blue Shield Association plan, Life Link III is required to submit the claim to the Blue Cross entity that operates in the state where medical services were provided.

41. In accordance with those policies, Life Link III submitted this claim to Defendant. Defendant, through Blue Cross Blue Shield of Illinois, offered a payment of $45,489.60 as full compensation for the claim through a SCA.

42. Defendant was a party to or intended beneficiary of the SCA because it is the entity that received and processed the claim for services.

43. On November 11, 2024, Life Link III accepted the negotiated payment amount of $45,489.60.

44. The agreement states that the claim would be paid within 15 business days from the date the provider signed the agreement.

45. Defendant did not deny the claim, find it to be non-covered under the patient's plan, or reject the terms of the agreement.

46. Defendant made a partial payment on the claim in the amount of $21,796.53, but has not paid the full amount it agreed to pay.

47. Defendant owes Life Link III $23,793.07 pursuant to the negotiated agreement.

### B. Blue Cross Fails to Process Life Link III's Claims and Receives an Unjust Benefit as a Result.

#### i. Claim for Services Provided on August 22, 2022

48. On August 22, 2022, Life Link III provided two separate emergency air ambulance flights to a patient insured by Defendant.

49. Defendant paid the claim for the first flight, but erroneously denied the claim for the second flight as a duplicate claim. The claim was not a duplicate because two separate emergency air ambulance flights were provided.

50. Life Link III billed a total of $61,662.00 for the second flight and submitted a claim to Defendant.

51. Life Link III filed an internal appeal of this claim denial, but Defendant continued to deny the claim as a duplicate.

52. As a result, Life Link III provided uncompensated care to Defendant's insured, and Defendant benefitted as a result.

### ii. Claim for Services Provided on July 4, 2024

53. On July 4, 2024, Life Link III provided emergency air ambulance services to a patient insured by Defendant.

54. Life Link III billed a total of $69,387.00 for these services and submitted a claim to Defendant.

55. Defendant paid $13,327.60 for the base rate for the services.

56. Defendant paid nothing for the mileage for the services for the claim line with the code A0436.

57. Defendant owes $39,200.00 for the mileage.

58. Defendant denied the claim line for mileage as medically unnecessary and Life Link III filed an appeal to this claim denial. This denial reason is erroneous because the emergency transport was medically necessary, as shown by Defendant's payment of the base rate for the same transport.

59. Rather than processing the appeal as a challenge to the erroneous medical necessity determination, Defendant dismissed the appeal on the grounds that Life Link III did not follow No Suprises Act IDR requirements.

60. However, Life Link III did not attempt to use the No Surprises Act process because the claim did not yet qualify for the IDR process. Where a claim is found not to be covered, it is not qualified for IDR under the No Suprises Act.

61. Instead, Life Link III sought to appeal the erroneous medical necessity determination by Defendant.

62. After Defendant corrects the erroneous medical necessity-based denial, the parties will be able to negotiate the payment rate and, if that negotiation is unsuccessful, submit the claim to IDR.

63. Defendant's failure to process the appeal properly has thus prevented Life Link III's ability to negotiate an appropriate payment rate or engage in the IDR process.

64. As a result, Life Link III has provided uncompensated care to Defendant's insured, and Defendant benefitted as a result.

## COUNT I – BREACH OF CONTRACT
### Against Both Defendants

65. Plaintiff incorporates by reference all preceding paragraphs above as though fully set forth herein.

66. For the claims for services provided on November 12, 2023; December 30, 2023; and October 5, 2024, Defendant entered into written agreements to pay agreed amounts for each of those claims.

67. Life Link III accepted each of Defendant's offers and formed a valid contract with Defendant.

68. Defendant breached its obligation to pay the agreed amounts by failing to make a payment within 15 days.

69. To date, Defendant has still not paid any of the agreed amounts on those claims, and Life Link III has suffered a financial loss as a result.

70. For the claims described above, Defendant breached its obligation to pay negotiated payment amounts pursuant to Defendant's agreement.

71. Life Link III is entitled to a damages in the amount of for Defendant's breach of the negotiated payment agreements, a total of $68,092.87.

## COUNT II – PROMISSORY ESTOPPEL

72. Plaintiff incorporates by reference all preceding paragraphs above as though fully set forth herein.

73. For the claims for services subject to SCAs provided on November 12, 2023, December 30, 2023, and October 5, 2024, Life Link III pleads, in the alternative to Count I, a claim for promissory estoppel.

74. The negotiated offer as accepted by Life Link III constitutes a promise for which Life Link III may recover under the doctrine of promissory estoppel.

75. The negotiated offer accepted by Life Link III is a promise that Defendant should reasonably have expected to induce action or forbearance of a definite and substantial character on the part of Life Link III.

76. Specifically, Defendant reasonably expected that the negotiated offer amount accepted by Life Link III would cause Life Link III to not initiate IDR proceedings.

77. Defendant's promise of payment of the agreed amount induced Life Link III to forgo submitting the claim to IDR.

78. Under the No Suprises Act, Life Link III cannot recover the payment from the insured and lost the opportunity to timely initiate IDR proceedings in reliance on Defendant's promise to pay the negotiated amount.

79. Accordingly, injustice can only be avoided by enforcement of Defendant's promise to pay the negotiated claim amount.

80. To the extent that Life Link III cannot recover the amounts owed on these claims through Count I, Life Link III is entitled to damages in the amount of $68,092.87 for the negotiated payment amounts Defendant promised to pay.

## COUNT III – UNJUST ENRICHMENT

81. Plaintiff incorporates by reference all preceding paragraphs above as though fully set forth herein.

82. For the claims for services subject to SCAs provided on November 12, 2023, December 30, 2023, and October 5, 2024, Life Link III pleads, in the alternative to Counts I and II, a claim for unjust enrichment.

83. For claims for services provided on August 22, 2022 and July 4, 2024 Defendant received a benefit by Life Link III's provision of services to Defendant's insured.

84. Defendant was aware of the benefit it received as a result of Life Link III's provision of services.

85. Defendant retained the benefit of Life Link III's services under circumstances where it is inequitable for Defendant to retain that benefit.

86. Specifically, Life Link III attempted to appeal Defendant's claim decisions through Defendant's appeal process, but Defendant continued to arbitrarily deny the claims without proper consideration of the evidence provided by Life Link III on appeal.

87. As a result, Life Link III is entitled to a reasonable payment amount for the services it provided and from which Defendant benefitted.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter an order:

A. An award of damages in the amount of $68,092.87 for claims for services provided on November 12, 2023; December 30, 2023; and October 5, 2024.

B. An award of damages in the amount of $61,662.00 for the services provided on August 22, 2022.

C. An award of damages in the amount of $39,200.00 for the services provided on July 4, 2024.

D. All other relief as the Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury as to all matters so triable.

Dated: November 7, 2025

**s/David W. Asp**
David W. Asp (MN #0344850)
Derek C. Waller (MN #0401120)
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Ave. South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Fax: (612) 339-0981

ATTORNEYS FOR PLAINTIFF